UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>    v.<br><br>DORCAS Y. AGUILAR,<br><br>    Defendant. | Case No. 21-cv-06897-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket No. 35 |

## I.  INTRODUCTION

In this case, Plaintiff Brian Whitaker alleges that Defendant Dorcas Aguilar has violated the Americans with Disabilities Act of 1990 ("ADA") and California Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53, because her restaurant, Cafecito Latino, purportedly fails to provide wheelchair-accessible outside dining spaces.  Aguilar has moved for judgment on the pleadings based on mootness and a failure to state a claim.  She argues that the ADA claim is moot because (1) Cafecito Latino does not currently provide *any* outside dining spaces, and (2) the parties have entered into a Consent Decree that resolves the injunctive relief that Whitaker seeks.  Aguilar also argues that the claim is insufficiently pleaded.  For the foregoing reasons, the Court agrees that the ADA claim is moot and **GRANTS** Aguilar's motion for judgment on the pleadings.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the complaint, Whitaker is a quadriplegic who uses a wheelchair for mobility.  Docket No. 1 (Compl.) ¶ 1.  Dorcas Aguilar owns Cafecito Latino, which is located at 888 Geneva Avenue, San Francisco, California.  *Id.* ¶ 3.

In August 2021, Whitaker went to Cafecito Latino with the intent to avail himself of its

goods and services, motivated in part to see if the business complied with disability access laws. *Id.* ¶ 8. On the date of Whitaker's visit, however, the restaurant allegedly failed to provide wheelchair accessible dining surfaces. *Id.* ¶ 10. Whitaker claims that he will return to Cafecito Latino to avail himself of its goods or services and to determine disability access compliance. *Id.* ¶ 20. Whitaker also alleges that he is deterred from returning to Cafecito Latino currently because of existing and unknown barriers. *Id.*

On February 23, 2022, Whitaker's counsel provided sixteen photos that were allegedly taken of Cafecito Latino by an investigator. *See* Docket No. 35 (Motion for Judgment on the Pleadings, or "Mot.") at 2; Docket No. 35-1 (Declaration of Kevin Boutin, or "Boutin Decl.") ¶ 3. According to Aguilar, fifteen of these photos are of Cafecito, a coffee shop located at 406 Ellis Street—not Cafecito Latino. Mot. at 2. Aguilar does not have any connection to Cafecito. *Id.* On September 6, 2021, Whitaker filed a complaint against Aguilar, alleging violations of the Americans with Disabilities Act of 1990 ("ADA") and California Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53. Docket No. 1. On December 8, 2021, Aguilar filed her answer. Docket No. 20.

On December 16, 2021, the Court entered a consent decree resolving the injunctive relief sought in the case. Docket No. 24 (Consent Decree). The Consent Decree is a "full, complete, and final disposition and settlement of all of Plaintiff's claims against Defendant and any other parties for injunctive relief that have arisen out of the acts and/or omissions alleged, or which could have been alleged, in the subject Complaint." *Id.* ¶ 6. Under the terms of the Consent Decree, *if* Aguilar ever provides dining tables, then she will provide a certain number of accessible dining tables that satisfy specific accessibility requirements. Consent Decree Exhibit A (Docket No. 24-1) at 2. The terms of the Consent Decree are expressly written in the conditional. *Id.* In other words, the Consent Decree does not affirmatively require Aguilar to provide dining tables for customers now or at any point in the future.

In light of the consent decree, on December 20, 2021, the Court granted the parties' joint stipulation to forego the joint site inspection required under General Order No. 56. Docket No. 26 (December 20, 2022 Order). On March 9, 2022, the parties attended a settlement conference

1  before Judge Hixson but ultimately did not settle. Docket No. 33 (Min. Entry).

2  On April 6, 2022, Aguilar moved for judgment on the pleadings. Docket No. 35. On April 20, 2022, Whitaker filed his opposition. Docket No. 37 ("Opp."). On April 27, 2022, Aguilar filed her reply. Docket No. 38 ("Reply"). On May 19, 2022, the Court heard oral argument from the parties. During the oral argument, Aguilar's counsel conceded that Aguilar had at one point kept a stool outside of Cafecito Latino, but that the stool has been removed.

The matter is thus fully briefed and ripe for adjudication.

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). That is, a court considers "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Id.* at 1054; *see also Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (stating that, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks omitted).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not

3

simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by

4

themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

Either way, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

## IV.     DISCUSSION

Aguilar moves to dismiss the ADA claim both for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). *See* Mot. at 1. She also asks the Court to decline to exercise supplemental jurisdiction over the Unruh Act claim should the ADA claim be dismissed. *Id.* The Court will address each argument in turn.

A.     <u>Injunctive Relief</u>

Aguilar argues that the ADA claim should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) because the claim is moot. She articulates two separate grounds for mootness: (1) the subject property does not have any dining surfaces, which are the only alleged barriers identified in the complaint, and (2) the entry of a Consent Decree resolved the injunctive portions of the complaint. Mot. at 1.

> Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings. Whether "the dispute between the parties was very much alive when suit was filed ... cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires." A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation. In other words, if events subsequent to the filing of the case resolve the parties' dispute, [a

5

court] must dismiss the case as moot ....

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086–87 (9th Cir. 2011) (citations omitted); *see also Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 862 (9th Cir. 2017) ("'The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.'") (citation omitted).

A claim may become moot if (1) subsequent events have made it clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998). "Once a defendant has remedied all ADA violations complained of by a plaintiff, the plaintiff's claims become moot and he or she loses standing." *Whitaker v. Chanel, Inc.*, No. 21-cv-09330-SVK, 2022 WL 1122645, at *5 (N.D. Cal. Apr. 14, 2022) (quoting *Johnson v. Case Ventures, LLC*, No. 19-cv-02876-EJD, 2020 WL 4747908, at *2 (N.D. Cal. Aug. 17, 2020)); *see also Johnson v. 1082 El Camino Real, LP*, No. 17-cv-01391-EJD, 2018 WL 1091267, at *2 (N.D. Cal. Feb. 28, 2018) (finding an ADA claim moot where "the undisputed evidence show[ed] that Defendants ha[d] corrected the sole alleged access barrier alleged in the complaint"). In that situation, the court no longer has subject matter jurisdiction over the ADA claim. *Chanel*, 2022 WL 1122645, at *5.

The uncontroverted evidence in this case demonstrates that the ADA violation alleged by Whitaker is no longer present at Cafecito Latino. The complaint alleges that Cafecito Latino "provides dining surfaces to its customers but fails to provide wheelchair-accessible outside dinning [*sic*] surfaces." Compl. ¶ 11. Aguilar's sworn declaration addressed these allegations. *See* Declaration of Dorcas Y. Aguilar ("Aguilar Decl.") (Docket No. 35-3). Aguilar alleged that Cafecito Latino serves food and drinks out of a window adjacent to the sidewalk. *Id.* ¶ 2. She explained that Cafecito Latino does not currently put out any table or dining surface for customers to use, and that she does not intend to ever put out any tables in front of the restaurant. *Id.* She also provided a photo of the outside of Cafecito Latino that is "representative of how [Cafecito Latino] appears every day at all times, with respect to the absence of any table or dining surface." *Id.* ¶ 2; *see also* Exhibit A to the Aguilar Declaration (Docket No. 35-4).

6

In addition to Aguilar's declaration and other supporting evidence, the Consent Decree settled "all claims regarding injunctive relief" raised in the case. Consent Decree ¶ 4. As noted above, the Consent Decree is a "full, complete, and final disposition and settlement of Plaintiff's claims against Defendant and any other parties for injunctive relief that have arisen out of the acts and/or omissions alleged, or which could have been alleged, in the subject Complaint." *Id.* ¶ 6.

Whitaker does not challenge Aguilar's evidence regarding the lack of dining surfaces at Cafecito Latino. *See* Opp., Reply at 2. He does, however, take issue with Aguilar's position that the Consent Decree has fully resolved his ADA claim. Opp. at 1. Whitaker claims that the "ADA claim has been largely, but not completely, resolved," and maintains that he "intends to inspect the entire property and have all barriers pertaining to him removed." *Id.* But Whitaker does not provide any evidence in support of his theory that there may be other barriers to access at Cafecito Latino, and the parties jointly stipulated to forego the joint site inspection. *See* Docket No. 26; *see also* Joint Stipulation (Docket No. 23) ¶ 7 ("[T]he parties wish to forego the joint site inspection required under General Order no. 56 in favor of a cost-effective settlement"). Whitaker's "failure to offer competent evidence showing that additional accessibility barriers remain leaves his ADA claim without support." *Johnson v. Opa Campbell LP*, No. 21-cv-01619-PJH, 2021 WL 3493712, at *4 (N.D. Cal. Aug. 9, 2021). Importantly, the Consent Decree waived any claims "for injunctive relief that have arisen out of the acts and/or omissions alleged, or which could have been alleged, in the subject of the Complaint." *See* Consent Decree ¶ 6.

In sum, Aguilar has submitted evidence showing that Cafecito Latino does not currently offer dining surfaces to customers. *See* Aguilar Decl. ¶ 2; Reply at 2. She has also agreed that if she ever does provide dining surfaces to customers, she will provide a certain number of dining surfaces that meet accessibility standards. *See* Consent Decree Exhibit A at 2. In view of the record before the Court, and in light of the Consent Decree in which Whitaker waived his right to seek injunctive relief arising from the Complaint, the Court concludes that Whitaker's request for injunctive relief is obviated by merger into settlement and consent decree.[1] *See Stroman v. W.*

---

[1] Because the Court concludes that Whitaker waived any claims for injunctive relief that could have arisen under the Complaint, it does not reach Aguilar's second argument that the ADA claim

1    *Coast Grocery Co.*, 884 F.2d 458, 463 (9th Cir. 1989) (holding that settlement agreement in which

2    plaintiff waived "all claims" required dismissal of subsequent lawsuit); *Matthews v. NPMG*

3    *Acquisition Sub LLC*, 519 F. App'x 429, 430 (9th Cir. 2013) (holding that consent decree in which

4    plaintiffs waived their individual claims required dismissal of subsequent lawsuit).

5         This finding does not necessarily resolve Whitaker's ADA claim, though, because

6    Whitaker asserts that he is entitled to attorneys' fees as a "prevailing party."

7    B.    <u>Attorney's Fees</u>

8         Whitaker contends that the ADA claim is not moot because he is a "prevailing party"

9    under the ADA and thus entitled to attorneys' fees and costs. The ADA provides that a court may

10   exercise its discretion to allow the "prevailing party" to recover attorneys' fees and costs. 42

11   U.S.C. § 12205. A prevailing plaintiff under the ADA "'should ordinarily recover an attorney's

12   fee unless special circumstances would render such an award unjust.'" *Jankey v. Poop Deck*, 537

13   F.3d 1122, 1130 (9th Cir. 2008) (quoting *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128,

14   1134 (9th Cir. 2002)).

15        In *Buckhannon*, the Supreme Court examined the circumstances under which a plaintiff

16   could obtain "prevailing party" status under the ADA. *Buckhannon Bd. & Care Home, Inc. v. W.*

17   *Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001). The plaintiffs challenged a West

18   Virginia law requiring all residents of residential board and care homes to be capable of moving

19   themselves away from imminent danger, such as a fire. *Id.* at 600–01. While the case was

20   pending, the West Virginia state legislature eliminated the self-preservation requirement, thus

21   rendering plaintiffs' action moot. *Id.* at 601. Plaintiffs nonetheless sought attorneys' fees as the

22   "prevailing party" under the "catalyst theory," which posited that a plaintiff was a "prevailing

23   party" if he or she "achieve[d] the desired result because the lawsuit brought about a voluntary

24   change in the defendant's conduct." *Id.* The Supreme Court rejected the theory that a defendant's

25   voluntary change in conduct could serve as a basis for attorneys' fees. *Id.* at 610 ("[W]e hold that

26   the "catalyst theory" is not a permissible basis for the award of attorney's fees under the FHAA,

27   ―――――

28   should be dismissed under Rule 12(b)(6) for failing to meet standards of specificity. *See* Mot. at 7–9.

42 U.S.C. § 3613(c)(2), and ADA, 42 U.S.C. § 12205.").

In the course of its discussion of the catalyst theory, *Buckhannon* described how consent decrees and settlement agreements may serve as bases for an award of attorney's fees. *Buckhannon* indicated that "a consent decree . . . is a court-ordered change in the legal relationship between the plaintiff and the defendant," and that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604 (cleaned up). Following *Buckhannon*, a litigant must meet two criteria to qualify as a prevailing party: he or she must achieve a "material alteration of the legal relationship of the parties," and that alteration must be "judicially sanctioned." *Id.* at 604–05; *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002) ("[T]he *Buckhannon* Court announced that recovery of attorney's fees requires a 'court-ordered change in the legal relationship between' the parties, in which the legal change that the plaintiff claims to have caused is 'judicially sanctioned.'") (internal alterations omitted); *see also Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) ("[E]ssentially, in order to be considered a 'prevailing party' after *Buckhannon*, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned.") (internal quotations and citations omitted).

Under *Buckhannon*, then, Whitaker is a prevailing party if he can show that there has been a "material alteration of the legal relationship of the parties" which has been "judicially sanctioned." *Buckhannon*, 532 U.S. at 604–05.

C. The Scope of the Consent Decree

Under the terms of the Consent Decree, *if* Cafecito Latino ever decides to provide dining surfaces, *then* Aguilar shall provide a certain number of dining-accessible surfaces. *See* Consent Decree Exhibit A at 2. But because the Cafecito Latino serves food and drinks out of a window adjacent to the sidewalk, Aguilar does not currently put out any table or dining surface for customers to use, nor does she ever plan to do so. Aguilar Decl. ¶ 2. And because the terms of the Consent Decree are expressly written in the conditional tense, it does not appear that the Consent Decree requires Aguilar to affirmatively modify her behavior. In other words, the Consent Decree

9

does not require Aguilar to do something that she would not have to do; nor does it prohibit anything she is planning to do.

D. <u>The Consent Decree Does Not Constitute a Material Alteration of the Parties' Legal Relationship</u>

The key question is whether a consent decree that is expressly written in the conditional constitutes a "material alteration of the parties' legal relationship" that can justify an award of attorney's fees. Case law indicates that merely entering into a *settlement agreement* that does not require the defendant to affirmatively take any action does not confer prevailing party status. Instead, "[a] settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" *Jankey*, 537 F.3d at 1130 (quoting *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)); *see also Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013) ("A material alteration of the parties' legal relationship occurs when 'the plaintiff can force the defendant to do something he otherwise would not have to do.'") (quoting *Fischer*, 214 F.3d at 1118).

*Fischer* helpfully illustrates the parameters of attorney's fees for injunctive relief obtained under the ADA through a settlement agreement. *See* 214 F.3d at 1117. The plaintiff, who was a blind man, filed suit against a restaurant under the ADA after allegedly being denied access because of his service dog. *Id.* The parties eventually entered into a settlement agreement, which required the restaurant to "print a four-paragraph statement explaining its policy of nondiscrimination toward people with disabilities" and post it "conspicuously" throughout its business. *Id.* The Ninth Circuit found that Fischer was a prevailing party under the ADA because "Fischer has an enforceable settlement that requires the Inn to do something it otherwise would not be required to do." *Id.* at 1118. "In this case, the defendant is required to print, publish, and post a new and expanded nondiscrimination policy. Because the defendants would not otherwise have to take these actions, Fischer is the prevailing party." *Id.* at 1118.

In keeping with *Fischer*, courts find that a plaintiff is a prevailing party under the ADA where the settlement agreement requires the defendant to modify his or her behavior and do

something it otherwise would not have to do.  *See, e.g.*, *Hernandez v. Spring Charter Inc.*, No. 19-cv-01479-TSH, 2020 WL 1171121, at *3 (N.D. Cal. Mar. 11, 2020) ("Here, the settlement agreement requires certain architectural changes to the subject property and payments to Hernandez.  As such, the settlement agreement materially altered the legal relationship between the parties: Defendants '[are] required to do something directly benefitting [Hernandez] that they otherwise would not have had to do.'") (quoting *Fischer*, 214 F.3d at 1118); *Chapman v. NJ Properties Inc.*, No. 16-cv-02893-EJD, 2019 WL 3718585, at *2 (N.D. Cal. Aug. 7, 2019), *aff'd sub nom. Chapman v. Panchal*, 834 F. App'x 333 (9th Cir. 2021) (plaintiff was the prevailing party where settlement agreement required architectural changes and payments to him); *Jankey*, 537 F.3d at 1130 (plaintiff was prevailing party where settlement agreement required defendants to install signage); *Rodgers v. Fitzgerald*, No. 14-cv-00985-DMR, 2016 WL 4658974, at *4 (N.D. Cal. Sept. 7, 2016) (plaintiff was prevailing party where settlement agreement required defendants to construct a new ramp and landing, among other accessibility improvements).  Likewise, courts have found that a plaintiff is a prevailing party under the ADA where a consent decree requires the defendant to modify his or her behavior and do something that it would not otherwise have to do.  *See also Schutza v. City of San Diego*, No. 13-cv-2992, 2017 WL 3149509, at *1 (S.D. Cal. July 24, 2017), *aff'd*, 756 F. App'x 768 (9th Cir. 2019) (plaintiff was prevailing party where consent decree required architectural changes); *Johnson v. Hunters Point Brewery, LLC*, No. 21-cv-00372-LB, 2021 WL 3886038, at *1 (N.D. Cal. Aug. 31, 2021) (same); *Overbo v. Loews California Theatres, Inc.*, No. 07-cv-05368-MHP-LB, 2010 WL 11719051, at *3 (N.D. Cal. Aug. 17, 2010) (plaintiffs were prevailing parties where consent decree required defendants to remediate barriers at the Metreon facilities).  In all of these cases, the terms of the settlement agreement or consent decree required the defendant to alter behavior in which the defendant would have otherwise engaged.  *Cf. Barrios*, 277 F.3d at 1134 (finding that plaintiff was a prevailing party where "the settlement agreement prohibits the CIF from excluding Barrios from on-field coaching of baseball games, and requires it to pay Barrios $10,000 in damages" and defendant had repeatedly refused to allow Barrios to coach on the field).  Otherwise, there is no material alteration of the parties' relationship.

11

1    In the case at bar, the Consent Decree does not require Aguilar to modify her behavior or
2 prevent her doing something she otherwise intended to do. She has no intent to install outdoor
3 dining tables. Hence, the Consent Decree did not meaningfully alter the legal relationship
4 between the parties. Whitaker is not a prevailing party under the ADA for purposes of awarding
5 fees.

### E. Unruh Act Claim

Even though there is no longer any live claim under the ADA in view of the Consent Decree and the waiver of injunctive relief provided therein—the only relief available under the ADA—the Unruh claim for damages is live "because a claim for damages under the Unruh Act looks to past harm." *Opa Campbell*, 2021 WL 3493712, at *4 (citation omitted). As a state law claim, though, it is only before the Court pursuant to the Court's supplemental jurisdiction, as there is no other basis for jurisdiction over such claim. *See* 28 U.S.C. § 1367(a). Supplemental jurisdiction is discretionary. *Opa Campbell*, 2021 WL 3493712, at *4. Aguilar argues the Court should decline to exercise supplemental jurisdiction of Whitaker's Unruh Act claim. Mot. at 6. Whitaker urges the Court to retain supplemental jurisdiction. Opp. at 2. The Court declines to exercise supplemental jurisdiction over the Unruh Act claim because the litigation is at an early stage and comity interests outweigh any inefficiencies.

Section 1367(c) provides that courts may "decline to exercise supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In this case, it is appropriate to decline to exercise supplemental jurisdiction pursuant to § 1367(c)(4).

The Ninth Circuit recently considered § 1367(c) in *Arroyo v. Rosas* and recognized that "exceptional circumstances" to decline jurisdiction may exist when an Unruh Act claim is paired with an ADA claim. *See* 19 F.4th 1202, 1213–14 (9th Cir. 2021) ("[W]e have little difficulty

concluding that the district court did not abuse its discretion in concluding that the situation presented here involves 'exceptional circumstances' within the meaning of § 1367(c)(4)."). The practice of pairing ADA claims with Unruh Act claims is problematic because it allows litigants to evade California's heightened procedural rules for Unruh Act claims.

In 2015, the California Legislature "imposed additional procedural requirements on 'construction-related accessibility claims' in order to address what it believed was continued abuse by 'high-frequency litigant[s].'" *Arroyo*, 19 F.4th at 1207 (quoting Cal. Civ. Proc. Code § 425.55(a)(2), (b)) (alteration in original). By filing Unruh Act claims with ADA claims in federal court, plaintiffs can evade these procedural safeguards. *Id.* at 1213 ("In short, the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded."); *Garcia v. Maciel*, No. 21-cv-03743-JCS, 2022 WL 395316, at *2 (N.D. Cal. Feb. 9, 2022) ("Courts have generally held that, under the *Erie* doctrine, those requirements [the Unruh Act's procedural requirements] do not apply in federal court.") (citation omitted).

Despite its acknowledgment of the potential problems associated with exercising supplemental jurisdiction over Unruh Act claims, *Arroyo* held that the district court abused its discretion by declining to exercise supplemental jurisdiction over the Unruh Act claim. 19 F.4th at 1216–17. This part of the holding depended on the late stage of the litigation: the district court had already issued an order on summary judgment in favor of the plaintiff. *Id.* at 1215–16 ("Given that the correct disposition of Arroyo's Unruh Act claim follows obviously and ineluctably from the findings that the district court has already made, it would be a sheer waste of time and resources to require that claim to be refiled in state court.").

Based on the foregoing, many courts have held that *Arroyo*'s reasoning supports declining to exercise supplemental jurisdiction over Unruh Act claims where the litigation is at an early stage. *See, e.g.*, *Whitaker v. Pita Hub Inc.*, No. 21-cv-05571-DMR, 2022 WL 1157498, at *2 (N.D. Cal. Apr. 19, 2022), *Whitaker v. Alice & Olivia California Holdings LLC*, No. 21-cv-08106-VC, 2022 WL 1135088, at *1 (N.D. Cal. Apr. 18, 2022); *Garcia*, 2022 WL 395316, at *3 (collecting cases). The reason is that when a case has not progressed beyond the threshold stages, "the strong comity concerns identified by the Ninth Circuit in *Arroyo* outweigh any countervailing

13

considerations of economy and efficiency that might be adversely affected by requiring Garcia to refile his Unruh Act claim in state court." *Garcia*, 2022 WL 395316, at *5.

Here, the litigation is still in its early stages, and the Court has not delved into the merits of Whitaker's Unruh Act claim. It makes little sense to retain supplemental jurisdiction. Thus, under § 1367(c)(4), the Court declines to exercise supplemental jurisdiction over Whitaker's Unruh Act claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Aguilar's motion for judgment on the pleadings as there remains no live claim for injunctive relief under the ADA, and the Plaintiff is not entitled to attorney's fees under the ADA. The Court declines to exercise supplemental jurisdiction over the Unruh Act claim. The case is **DISMISSED** without prejudice to refiling in state court.

This order disposes of Docket No. 35. The Clerk is instructed to enter Judgment and close the case.

**IT IS SO ORDERED**.

Dated: August 4, 2022

_____
EDWARD M. CHEN
United States District Judge